```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT


UNITED STATES OF AMERICA,       :
                                :
     v.                         :
                                :         Case No. 2:13-cr-106
EDIN SAKOČ,                     :
                                :
         Defendant.             :
```

## Opinion and Order

Defendant Edin Sakoč moves to exclude the recorded deposition testimony of Zarko Cutura in its entirety because Mr. Cutura refused to answer relevant and non-collateral questions on cross-examination and thereby deprived Mr. Sakoč of his Sixth Amendment right to confrontation.  ECF No. 96.  He also moves to exclude all tape recordings and transcripts of phone calls that he made or received while in jail as irrelevant under Rule 401 and as more prejudicial than probative under Rule 403.  *Id.*  Conversely, the government moves to admit evidence under Rule 404(b) regarding Mr. Sakoč's alleged efforts to obstruct his trial, including an attempt to bribe Mr. Cutura.  ECF No. 101.  The government argues that Mr. Cutura's testimony should be admitted in its entirety and also seeks a ruling that relevant jail calls are admissible.  *Id.*

For the following reasons the Court grants Defendant's request to strike only the portions of Mr. Cutura's testimony

related to alleged witness tampering.[1]  The Court will admit the relevant jail calls.  Accordingly, the Court **grants in part** and **denies in part** Defendant's motion *in limine* and **grants in part** and **denies in part** the government's motion to admit evidence.

I.   Factual Background

In 1992 Mr. Sakoč served in the Bosnian army during the four-year conflict that resulted in the dissolution of the former Yugoslavia.  In March 2001 Mr. Sakoč filed a Form I-590 for refugee status.  In May 2001, after an interview with a U.S. immigration officer in which he denied committing any acts of persecution while in the military, the U.S. government granted him refugee status.  In May 2004, Mr. Sakoč applied for and was granted lawful permanent resident status.  In February 2007, Mr. Sakoč filed a Form N-400 for citizenship in which he denied committing any crimes or persecuting anyone.  In September 2007, after a June 2007 interview with another U.S. immigration officer in which he again denied committing any crimes, the United States granted him citizenship.

On July 25, 2013, the government filed an indictment against Mr. Sakoč alleging that he made false statements on his Form N-

---

[1] This opinion will be supplemented by a future opinion ruling on other contemporaneous objections counsel for the Defendant made during the remaining portions of Mr. Cutura's deposition.  *See* ECF No. 96 at 6 (asking the Court to sustain contemporaneous objections and strike the corresponding testimony from the record).

400 and during the subsequent interview.  The indictment also alleges that Mr. Sakoč's application for citizenship was improper because he was not lawfully admitted to the United States for permanent residence.  Mr. Sakoč's allegedly false statements were in response to questions about whether he committed any crimes and whether he was a person of good moral character.  In order to prove that Mr. Sakoč made false statements, the government must first prove that he committed a crime or was a person of poor moral character.

   The government alleges that Mr. Sakoč and a man referred to as "Boban" went to the home of a Bosnian Croat family that was sheltering a Serbian woman, Tatjana Cucak (also referred to as "Gara"), and her family members.  Mr. Sakoč and Boban allegedly removed Ms. Cucak from the home against her will and Mr. Sakoč subsequently raped her.  Then, according to the government, he and Boban returned to the family home where Mr. Sakoč aided Boban in shooting and killing the woman's family members, burning the bodies, and burning down their house.

    Pursuant to Federal Rule of Criminal Procedure 15, counsel for the government and the defense traveled to Sarajevo to take recorded video depositions of several witnesses living outside the United States.  Prior to this trip, the Court held a status conference to discuss the logistics of the Court's involvement in the depositions.  The Court offered to be available to rule on

3

major objections at either side's request in real time in order to prevent any prejudice from waiting for a ruling at some point in the future.  This was important because each side essentially had only one chance to examine these foreign witnesses who were not willing or able to come to the United States to testify at trial.  The Court also stated that it would handle any objections that did not require an immediate ruling at a later time on the basis of the deposition transcripts.  *See* ECF No. 83.

In his deposition, Mr. Cutura testified about two major topics: 1) the events surrounding the alleged rape of Ms. Cucak and 2) an attempt to potentially bribe him to change his testimony.  Mr. Cutura testified that one summer night he observed Mr. Sakoč bring a blindfolded Ms. Cucak to the house where he was living at the time.  Mr. Sakoč then took her upstairs, apparently against her will.  Mr. Cutura stated that Ms. Cucak seemed scared and that he heard her crying and screaming while she was upstairs with Mr. Sakoč.  This went on for approximately twenty minutes.  Then Mr. Sakoč and Ms. Cucak came downstairs and Mr. Sakoč asked Mr. Cutura and another man who was there, Denis Didzar, who was next.  According to Mr. Cutura, Ms. Cucak was naked and bruised.

Mr. Cutura also testified that two unidentified men, one Muslim and one Croat, approached him about changing his testimony in exchange for money.  These two middlemen allegedly introduced

4

Mr. Cutura to a man named Mizra Kudra and another man who identified himself as Edis Sakoč – which is the name of the Defendant's son.  These men also went on to possibly offer to bribe Mr. Cutura to change his story.  When asked on cross-examination to state the name of the Croat, Mr. Cutura refused to identify him.  At that point counsel for the defense objected and moved to strike Mr. Cutura's testimony in its entirety on the ground that this refusal to answer a proper question was a denial of Mr. Sakoč's right to confrontation, right to due process, and right to a fair trial.  Counsel also objected that Mr. Cutura's refusal was a violation of Federal Rules of Evidence 601 and 603.

**II.**   Zarko Cutura's Deposition Testimony

    A. Waiver

    The government argues that Mr. Sakoč's objection and request to strike should be denied as waived because his counsel did not use the established mechanism for resolving this type of objection.  Specifically the defense should have requested that the Court instruct or compel the witness to answer.  The government notes that this was precisely the route the parties took when another witness, Bosko Buntic, refused to answer certain questions on cross-examination.  The government claims that the defense's objection cannot be resolved after the fact.

    The Court disagrees.  Other than the understanding the parties reached with the Court at the status conference, there

was no separate agreement between the government and the defense regarding deposition procedures.  It is clear from the transcript that counsel for the Defendant preserved an objection to Mr. Cutura's testimony and that this is the type of objection that the Court can resolve on the basis of the transcripts.

    This situation is different from Mr. Buntic's refusal to testify because there both the government and the witness objected that the defense's line of questioning was irrelevant. The parties needed a ruling on the relevance of the subject matter before the deposition could proceed.  Here the government never objected on any evidentiary basis to the cross-examination. Moreover, counsel was not required to request the Court to order the witness to answer because he was beyond the Court's contempt power to enforce such an order.

    The government has not demonstrated that it would be prejudiced in any way by the Court ruling on Defendant's request to strike now rather than at the time of the deposition. Accordingly the Court rejects the government's argument that the defense waived its objection.

### B. Confrontation Clause

Defendant argues that Mr. Cutura's refusal to identify the Croat middleman violated his Sixth Amendment right to confrontation.[2]  "The crux of this right is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand against the defendant and is available for cross examination." *Ryan v. Miller*, 303 F.3d 231, 247 (2d Cir. 2002).  The Supreme Court has described cross-examination as the "greatest legal engine ever invented for the discovery of truth."  *Howard v. Walker*, 406 F.3d 114, 128 (2d Cir. 2005) (quoting *California v. Green*, 399 U.S. 149 (1970)). "[T]he Confrontation Clause gives a defendant the right not only to cross-examination, but to effective cross-examination." *United States v. James*, 712 F.3d 79, 103 (2d Cir. 2013).  This right, however, is not absolute and a defendant is not entitled to "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Corby v.*

---

[2] Defense counsel also raised and preserved objections on other grounds including Mr. Sakoč's right to due process and to a fair trial.  Counsel also objected under Federal Rules of Evidence 601 and 603 because Mr. Cutura was not competent to be a witness nor complied with the oath requiring him to tell the whole truth.  However, the Defendant provided essentially no argument on any of these alternative grounds.  The other constitutional concerns are moot in light of the Court's ruling on the Confrontation Clause issue.  As for Rules 601 and 603, there is no evidence suggesting Mr. Cutura was not competent to testify or that he failed to give an oath or affirmation to tell the truth.  Therefore none of these theories provide an independent reason to strike Mr. Cutura's testimony.

7

*Artus*, 699 F.3d 159, 166 (2d Cir. 2012) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)(emphasis omitted)).

A witness's refusal to answer a question during cross-examination most frequently arises when a witness exercises his or her Fifth Amendment right against self-incrimination. This case presents a somewhat different situation because Mr. Cutura asserted no competing right or privilege and is beyond the Court's contempt powers. However, the Second Circuit's two-prong test for evaluating a witness's refusal to testify is nevertheless a useful starting point.

To reconcile a defendant's Sixth Amendment right to confrontation with a witness's assertion of a Fifth Amendment privilege a court must initially consider "(1) whether the matter about which the witness refuses to testify is collateral to his or her direct testimony, and (2) whether the assertion of the privilege precludes inquiry into the details of his or her direct testimony." *Bagby v. Kuhlman*, 932 F.2d 131, 135 (2d Cir. 1991). The Sixth Amendment is violated when a witness asserts the privilege with respect to a non-collateral matter *and* the defendant is deprived of a meaningful opportunity to test the truth of the witness's direct testimony. *Bagby*, 932 F.2d at 135. If the witness "simply refuses to testify" the witness's direct testimony "should be stricken in whole or in part." *Id.*

In *United States v. Treacy* the Second Circuit analyzed a trial court's decision to limit cross examination after balancing a journalist's qualified privilege protecting the compelled disclosure of non-confidential materials against the defendant's right to confrontation.  639 F.3d 32 (2d Cir. 2011).  The court noted that if the Confrontation Clause requires that testimony should be stricken when a constitutional privilege is invoked, then it must *a fortiori* require the same result when a witness invokes a comparatively weak privilege that only derives from federal common law.  *Id.* at 45.  This logic applies with even greater force here where the witness has asserted no right or privilege whatsoever, weak or strong, but has simply refused to answer.

The first question for the Court therefore is whether the identity of the Croat is collateral or not.  A general attack on credibility is a collateral matter.  *Treacy*, 639 F.3d at 45.  However, the Second Circuit explained that testimony "should ordinarily be stricken when the invocation of the privilege against self-incrimination prevents the defendant from cross-examining the witness with respect to his credibility regarding *the specific details of his direct testimony*."  *Id.* (emphasis added).  This is consistent with a previous case on which the government relies, *Dunbar v. Harris*.  In *Dunbar* the Second Circuit noted that questions about the witness's previous drug

9

dealings were a collateral matter because they "related neither to the crimes for which the [defendant] was charged nor to [the witness's] direct testimony."  612 F.2d 690, 693 (2d Cir. 1979).

The government argues that the identity of the Croat is a collateral issue because it does not directly relate to Mr. Cutura's direct testimony that Edis Sakoč and Mirza Kudra ultimately were the ones behind the bribe.  The government's position is undermined by the reality that Mr. Cutura testified fairly extensively about the unnamed middlemen on direct.  For example he testified that when investigators came to question him he did not want to disclose the names of the middlemen.  Cutura Dep. 40:17-21.  He testified that "two guys that were looking for financial gain" introduced him to Edis Sakoč.  *Id.* 41:15-17.  Present at the meeting with Edis Sakoč were "the guy who introduced himself as Edis Sakoč, Mirza Kudra, and the other two guys."  *Id.* 44:2-3.  Mr. Cutura also testified that the other two guys were making deals with someone without him knowing and ultimately offered him 25,000-30,000 marks to change his story.  *Id.* 45:1-21.  It is clear that all Mr. Cutura's direct testimony about the bribes involving Edis Sakoč and Mirza Kudra is inextricably intertwined with his testimony about the two unnamed middlemen.  Therefore his credibility with respect to the middlemen is not a collateral issue.

10

The government argues that even if the issue is not collateral, that the Defendant was not deprived of a meaningful opportunity to test the truth of the witness's direct testimony under *Bagby*'s second prong.  The government notes that Mr. Cutura testified that the Croat does not live far from him, works with him, and has known him since 1986.  According to the government, these details, along with his description of the meetings themselves, are more than sufficient to test Mr. Cutura's testimony and challenge his truthfulness.

The Court finds that the details Mr. Cutura provided were insufficient for the defense to effectively cross-examine Mr. Cutura.  The Croat's identity, independent of the scant biographical details Mr. Cutura offered, could potentially have had significant relevance to the defense's theory of the case, or, at a minimum, Mr. Cutura's credibility regarding the alleged bribes.  The defense was unable to determine whether such a person even existed on the basis of the details Mr. Cutura provided.  Moreover the government knew that Mr. Cutura would not reveal this name if asked and yet asked him questions about the middlemen on direct anyway.

The defense was deprived of a meaningful opportunity to test aspects of Mr. Cutura's direct testimony because of his unexplained refusal to answer.  This refusal is more egregious than most because Mr. Cutura was not protecting himself against

self-incrimination.  This violated Mr. Sakoč's constitutional right to confrontation.  The prosecution should not have the benefit of his testimony in light of this violation.

However, the Court declines to exclude Mr. Cutura's testimony in its entirety.  *United States v. Cardillo*, 316 F.2d 606 (1963), though a fairly old case, is cited with general approval in *Bagby* and *Treacy*.  In *Cardillo* the Second Circuit noted that not every refusal to answer a question requires striking the entirety of the witness's testimony.  *Id.* at 612. The court described three categories:

> The first would be one in which the answer would have been so closely related to the commission of the crime that the entire testimony of the witness should be stricken.  The second would be a situation in which the subject matter of the testimony was connected solely with one phase of the case in which event a partial striking might suffice.  The third would involve collateral matters or cumulative testimony concerning credibility which would not require a direction to strike and which could be handled (in a jury case) by the judge's charge if questions as to the weight to be ascribed to such testimony arose.

*Id.*  This situation seems to fall clearly into the second category because Mr. Cutura's testimony about the alleged rape in 1992 is an entirely separate topic from his testimony about attempts to bribe him more recently.  The parties even went on and off the record between topics so the testimony is clearly severable.  Accordingly, the Court orders that all of Mr. Cutura's testimony related to any potential witness tampering be stricken.

**III. Jail Tapes**

The Defendant moves to exclude all tape recordings and transcripts of phone calls he made or received while incarcerated under Federal Rules of Evidence 401 and 403.  The government seeks to admit all relevant statements under Rule 404(b) as evidence establishing Mr. Sakoč's consciousness of guilt.  The government contends conversations between Mr. Sakoč and his wife relate to a conspiracy to attempt to tamper with potential witnesses against the Defendant.

The Second Circuit has adopted an "inclusionary approach" to Rule 404(b) evidence and allows evidence to be received at trial "for any purpose other than to attempt to demonstrate the defendant's criminal propensity."  *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003) (internal quotation omitted).  Evidence of consciousness of guilt is admissible if the court:

> (1) determines that the evidence is offered for a purpose other than to prove the defendant's bad character or criminal propensity, (2) decides that the evidence is relevant and satisfies Rule 403, and (3) provides an appropriate instruction to the jury as to the limited purposes for which the evidence is introduced, if a limiting instruction is requested."  *Id.*

*United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004).  The Second Circuit has upheld the admission of various kinds of evidence on the ground that it demonstrated consciousness of guilt, including attempted witness tampering.  *Id.*  Since the jail tapes are being offered for a purpose other than to show Mr.

13

Sakoč's bad character or criminal propensity, the Court's analysis hinges on whether the tapes are relevant and satisfy Rule 403.

The government characterizes the conversations between Mr. and Mrs. Sakoč as "intentionally vague" and "clearly relate[d] to attempts to contact potential witnesses against defendant." ECF No. 101 at 2. The defense counters that they are too vague and unspecific to be probative and that their introduction will invite rampant speculation by the jurors that will be unfairly prejudicial to the Defendant and confusing and misleading for the jury. While the inferences the government hopes listeners will draw from the conversations are not quite as obvious as the government claims they are, the recorded conversations could be interpreted to potentially refer to witness tampering. For example, Mr. and Mrs. Sakoč refer to third parties by initials and at one point Mr. Sakoč urges his wife not to go any further when she starts to say "Zark." They seem concerned about the possibility of being recorded and there are several references to conversations and meetings their son may have had with others.

Evidence tending to suggest Mr. Sakoč engaged in witness tampering is highly relevant to his state of mind. The Court acknowledges that the relevance of the jail tapes in isolation is somewhat diminished in light of the fact the government will not have the benefit of Mr. Cutura's testimony connecting the tapes

14

to the attempted bribes he described.  However, even in isolation, the jail tapes' probative value is not outweighed by any potential prejudice.  The Defendant's arguments go to weight rather than admissibility.

The Court holds that the relevant portions of the recorded jail tapes are admissible.  The Court will give the jury a limiting instruction if one is so requested by counsel for the Defendant.

Dated at Burlington, in the District of Vermont this 22nd day of December, 2014.

>                              /s/ William K. Sessions III
>                              William K. Sessions III
>                              District Court Judge