**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF VERMONT**


UNITED STATES OF AMERICA,          :
                                   :
       v.                          :
                                   :     Case No. 2:13-cr-106
EDIN SAKOČ,                        :
                                   :
          Defendant.               :

## Opinion and Order

Defendant Edin Sakoč was charged with unlawful procurement of naturalization in violation of 18 U.S.C. § 1425(a).  ECF No. 1.  The jury heard trial testimony lasting for several weeks and ultimately returned a guilty verdict.  Mr. Sakoč now moves for a new trial pursuant to Federal Rule of Criminal Procedure 33 because, he argues, the government's summation constructively amended the indictment or, at a minimum, constituted a prejudicial variance.  ECF No. 199.  Mr. Sakoč also argues that a new trial is warranted because the verdict is against the weight of the evidence.  For the reasons described in detail below, Mr. Sakoč's motion for a new trial is **granted.**

## I.   Factual and Procedural Background

### A.  Background Facts

In 1992 armed conflict began in the republic of Bosnia and Herzegovina ("Bosnia") and continued for several years.  Mr. Sakoč is a Bosnian Muslim from the Čaplijina municipality in

Bosnia but is now a naturalized United States citizen. According to the government, Mr. Sakoč participated in the armed conflict and persecuted Bosnian Serbs.

The government's proof focused on a single night in July of 1992.  Mr. Sakoč allegedly acted in concert with his Croatian co-conspirator whom witnesses referred to as "Boban."  Boban's whereabouts and true identity are unknown.  On or about July 9, 1992, Mr. Sakoč and Boban allegedly removed Tatjana Cucak, a Bosnian Serb, from the home where she, her mother, Cvijeta Cucak, and her aunt, Vislija Ekmecic, were staying.  The three women had left their own home after it had been targeted by Croat forces and were spending the night with their friends, Misko and Nedja Durascovic.

The government alleged that after removing Tatjana Cucak from the Durascovics' residence, Mr. Sakoč brought her to a house in the nearby village of Počitelj where he assaulted and raped her.  Various witnesses' accounts of the events surrounding the rape and the house where it allegedly took place conflicted, often sharply, with one another.  The parties' theories of the case diverged most significantly with respect to this testimony.

According to the government, Mr. Sakoč then brought Ms. Cucak to a concentration camp after leaving Počitelj and returned with Boban to the Durascovic residence.  There Boban

2

allegedly shot Cvijeta Cucak and Vislija Ekmecic and burned their bodies and former home.  At trial the government claimed that in addition to the rape, Mr. Sakoč aided and abetted Boban and lied about all of these events on multiple occasions throughout his immigration process.

## B.  The Indictment

The Indictment refers generally to the conflict in Bosnia and specifically to the night of July 9, 1992.  It describes the three women as Victim-1, Victim-2, and Victim-3 and includes details of the alleged assault and rape, murder, and burning.

The Indictment also describes Mr. Sakoč's immigration history.  In March of 2001, Mr. Sakoč sought refugee status in the United States.  As part of the process he completed refugee application Form I-590 and met with a United States Immigration Officer.  The form asked "a number of questions related to his past, including his prior military service."  ECF No. 1 at 3. During his interview he "denied committing any acts of persecution while in the military."  *Id.*  He affirmed under penalty of perjury that the information he provided was true and correct and was ultimately granted authorization to enter the United States as a refugee.  Mr. Sakoč arrived in May of 2001 and settled in Vermont.

In March of 2004, Mr. Sakoč became a Legal Permanent Resident ("LPR") of the United States.  His application to

become an LPR included Form I-485, which "asked a number of
questions related to his past, including questions related to
the commission of past crimes." *Id.* He denied committing any
crimes and affirmed under penalty of perjury that the
information provided was true and correct.

In February of 2007 in Mr. Sakoč applied to become a
naturalized citizen of the United States. In support of his
application he completed a naturalization application, Form N-
400, which "asked a number of questions related to his past,
including questions related to any past crimes he may have
committed and whether he persecuted anyone." ECF No. 1 at 4.
He denied committing any crimes or persecuting anyone and
affirmed under penalty of perjury the information he provided
was true and correct. A United States Immigration Officer
interviewed him in June of 2007. In the interview he "denied
committing any crimes." *Id.* In September of 2007 he was
naturalized in the District of Vermont.

Count 1 charges Mr. Sakoč with "knowingly procur[ing] his
own naturalization contrary to law . . . in violation of Title
18, United States Code, Sections 1001(a) (Making False
Statements) and 1015(a) (Making False Statements Related to

4

Naturalization or Citizenship)." ECF No. 1 at 4-5.[1]  The Indictment then describes the specific questions on Form N-400 that the government alleges Mr. Sakoč answered falsely: 1) question 15 asked whether he had "committed any crime" for which he had not been arrested, 2) question 11 asked whether he had ever "persecuted (*either directly or indirectly*) any person because of race, religion, national origin, membership in a particular social group or political opinion," 3) question 23 asked whether he had ever "given false or misleading information to any U.S. government official while applying for any immigration benefit," and 4) question 24 asked whether he had ever "lied to any U.S. government official to gain entry or admission into the United States." ECF No. 1 at 5.  The Indictment also states that he verified the same false and fraudulent information during his interview with an immigration officer.

### C. Pre-trial Motions

In its pre-trial Motion to Take Foreign Depositions, ECF No. 44, the government described the "gravamen of the indictment" thus:

---

[1] The Indictment included two counts.  Count 1 charged Mr. Sakoč with violating 18 U.S.C. § 1425(a) (procuring naturalization "contrary to law"), while Count 2 charged him with violating 18 U.S.C. § 1425(b) (procuring naturalization for a "person not entitled thereto").  During the charge conference, the government voluntarily dropped Count 2, so only Count 1 was submitted to the jury.

> [D]efendant knowingly made numerous material false
> statements on immigration and naturalization forms by
> failing to disclose his criminal actions in his native
> country of Bosnia and Herzegovina.  Specially, the
> defendant failed to disclose that, in July 1992, during the
> war in Bosnia and Herzegovina, he kidnapped, assaulted, and
> raped a Bosnian Serb woman and he conspired to and aided
> and abetted the murder of said woman's elderly mother and
> aunt and the arson of their family home.

*Id.* at 1.  The government repeated this statement word for word

in its Motion for Continuance of Foreign Depositions.  ECF No.

57.  Other pre-trial filings contain similar summaries of the

charges and suggest that they all related to one night in July.

*See* ECF No. 102 at 2 ("The indictment alleges, *inter alia*, that

the defendant made false statements in his application for

naturalization about crimes he committed on a single night in

the [Č]apljina region in or around July 1992.").  As far as the

Court is aware, none of the government's pretrial filings state

that any other alleged false statements would be at issue.

**D.  Trial and Requests to Charge**

During *voir dire* counsel for the government stated that Mr.

Sakoč failed to disclose "kidnapping, rape, and assault of Ms.

Cucak and the aiding and abetting and murder of her mother and

aunt" in response to the four specific questions on his

naturalization application.  ECF No. 190 at 11.  Likewise the

government's opening statement suggested Mr. Sakoč lied about

the fact that "22 years ago in Bosnia, he kidnapped, assaulted,

and raped Tatjana Cucak.  He then helped his friend Boban murder
her elderly mother and aunt."  ECF No. 191 at 11-12.

The government's proposed jury instruction on unanimity
also described the false statements as Mr. Sakoč's failure to
disclose "his participation in the kidnapping, assault, and rape
of Tatjana Cucak and the murders of Cvijeta Cucak and Vislija
Ekmecic" and "his persecution of Tatjana Cucak, Cvijeta Cucak
and Vislija Ekmecic based on their ethnicity as a Serb."   ECF
No. 199-2 at 2-3.  These descriptions were inserted into the
language from the Indictment identifying the specific questions
to which Mr. Sakoč had allegedly given a false answer (questions
15, 11, 23, and 24).  *Id.*  The Court ultimately instructed on
unanimity but referred jurors to the language from the
Indictment that it has already quoted instead of using the
government's instruction exactly as proposed.  Nowhere in this
proposed instruction, however, did the government describe any
other theories as to how Mr. Sakoč had lied during the
immigration process.

In closing, the government spent the vast majority of its
argument focused on the claims that it had been advancing
throughout the pre-trial proceedings, discovery, and trial.  The
bulk of the government's summation thus described the alleged
crimes committed against the three women and the corresponding
allegation that Mr. Sakoč had aided and abetted Boban in

persecuting them on the basis of their Serbian identity. However, the government also briefly argued, almost as an afterthought, that Mr. Sakoč had made other false statements aside from those related to purported crimes and persecution in July of 1992.  The government argued that Mr. Sakoč lied on form I-485, his LPR application, because he stated that he was in the Yugoslav Army in 1978 and the Bosnian Army in 1994 but he did not list his membership in the HVO.[2]  The government also argued that Mr. Sakoč lied on his refugee application in two ways. First, Mr. Sakoč said he helped with food and building bunkers, but that was not his actual role.  Second, he was asked to list any political organizations to which he had belonged but he did not list the SDA[3] even though, according to a government witness, he had been a member.  ECF No. 197 at 25-27.

### E.  The Jury's Verdict

The Second Circuit has observed that it is "sound practice for a trial judge to charge a jury that it must be unanimous" as to what individual transaction serves as the basis for conviction.  *United States v. Dupre*, 462 F.3d 131, 144 (2d Cir. 2006).  This extends to unanimously agreeing on which statement a defendant made in violation of a false statement statute.

---

[2] The HVO stands for *Hrvatsko vijeće obrane*, the Croatian Defense Council.

[3] The SDA stands for *Stranka demokratske akcije*, Party of Democratic Action.

*United States v. Crisci*, 273 F.3d 235, 239 (2d Cir. 2001).   The

Court therefore charged the jury:

> In order to satisfy its burden with regard to the charge
> that the Defendant procured citizenship contrary to law,
> the government must prove, beyond a reasonable doubt, that
> the Defendant made one or more of these alleged false
> statements.
>
> You must give separate consideration to each of the alleged
> false statements the government has identified.  And,
> before you may find that the government has carried its
> burden of proof with regard to that element, you must
> unanimously agree that the Defendant made at least one
> particular material false statement.  This means that it is
> not sufficient to agree the Defendant made some false
> statements but not agree as to which one.  To convict the
> Defendant of the crime charged, you must all agree with
> regard to which specific false statement or statements the
> government has proved beyond a reasonable doubt.

ECF No. 180 at 15-16.

   Accordingly, the jury verdict sheet first asked whether

the jury had unanimously found Mr. Sakoč guilty or not guilty.

The foreperson put a check next to guilty.  It then stated that

the foreperson should proceed to the following question if the

jury had found him guilty.  The next question asked which false

statements "do you unanimously find were involved with respect

to the Defendant?"  The foreperson left the spaces next to

questions 15 and 11 blank but wrote "Guilty" next to questions

23 and 24.  ECF No. 185.

## II.  Legal Standard

   The grand jury "belongs to no branch of the institutional

Government, but rather serves as a kind of buffer or referee

between the Government and the people." *United States v. Thomas*, 274 F.3d 655, 670 (2d Cir. 2001) (en banc) (internal quotation and alteration omitted). Since *Ex parte Bain*, 121 U.S. 1 (1887) was decided, once an indictment has been returned its charges may not be broadened except by the grand jury itself. *Stirone v. United States*, 361 U.S. 212, 215-16 (1960). It would be inappropriate for a court to "speculate as to whether a grand jury *might* have returned an indictment in conformity with the available evidence, because such an exercise would work the harm the Grand Jury Clause is intended to prevent." *Thomas*, 274 F.3d at 670.

There are two constitutional requirements for an indictment: 1) it must contain the elements of the offense charged and "fairly inform[] a defendant of the charge against which he must defend," or in other words give notice, and 2) it must enable him "to plead an acquittal or conviction in bar of future prosecutions for the same offense," or in other words satisfy double jeopardy concerns. *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 87, 119 (1974)). This Court has previously noted that the "importance of ensuring that an indictment gives the defendant adequate notice of the charges against him cannot be understated." *United States v. Chase*, No. 2:04-cr-135, 2005 WL 3288731, at *4 (D. Vt. Nov. 30, 2005). The constructive

10

amendment doctrine is a corollary to this rule.  It prohibits the government from "changing its approach midstream to rely on theories or evidence of which the indictment contained insufficient notice."  *Id.*

To prevail on a claim of constructive amendment, a defendant must demonstrate that "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment."  *United States v. D'Amelio*, 683 F.3d 412, 416 (2d Cir. 2012) (emphasis omitted) (quoting *United States v. Mollica*, 849 F.2d 723, 729 (2d Cir. 1988)).  Constructive amendment is a *per se* violation of the Grand Jury Clause of the Fifth Amendment requiring reversal.  *Id.*

Nevertheless, the Second Circuit has "consistently permitted significant flexibility in proof, provided the defendant was given notice of the core of criminality to be proven at trial."  *United States v. Rigas*, 490 F.3d 208, 228 (2d Cir. 2007) (emphasis omitted) (quoting *United States v. Patino*, 962 F.2d 263, 266 (2d Cir. 1992)).  The "core of criminality" of an offense involves the essence of a crime in general terms but does not include the "particulars of how a defendant effected the crime."  *D'Amelio*, 683 F.3d at 418.  While the case law does

not define the phrase, it "describes the phrase in relation to the crime at issue." *Id.* There is also no constructive amendment "where a generally framed indictment encompasses the specific legal theory or evidence used at trial." *United States v. Milstein*, 401 F.3d 53, 65 (2d Cir. 2005) (quoting *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir. 2003)).

A variance, on the other hand, occurs when "the charging terms of the indictment are left unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment." *Salmonese*, 352 F.3d at 621 (2d Cir. 2003) (quoting *United States v. Frank*, 156 F.3d 332, 337 n.5 (2d Cir. 1998)). A variance in proof offends the constitution only if it infringes on the notice and double jeopardy provisions of an indictment. *D'Amelio*, 683 F.3d at 417. A defendant alleging variance must show "substantial prejudice" to warrant reversal. *Rigas*, 490 F.3d at 226 (2d Cir. 2007) (internal quotation omitted). A court assesses whether a variance is prejudicial and thus "fatal to the prosecution" by determining whether the "variance infringes on the substantial rights that indictments exist to protect," namely "to inform an accused of the charges against him so that he may prepare his defense to and to avoid double jeopardy." *Dupre*, 462 F.3d at 140.

Mr. Sakoč has moved for a new trial pursuant to Federal Rule of Criminal Procedure 33. Rule 33 permits the court to

"vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A trial court's discretion to grant a new trial is "broad." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992).

## III. Discussion

### A. Constructive Amendment

The first question the Court must address is whether the trial evidence "broaden[ed] the possible bases for conviction from that which appeared in the indictment." *Milstein*, 401 F.3d at 65 (quoting *United States v. Miller*, 471 U.S. 130, 138 (1985)). The Court finds that it did. During summation, counsel for the government referred to additional false statements related to Mr. Sakoč's military duties and membership in a political party.[4] These false statements are not described in the Indictment or anywhere else in the government's written pleadings or oral statements.

The only phrase in the Indictment that arguably could refer to facts other than the events of July 9, 1992 describes Mr.

---

[4] The government's reliance on *United States v. Elias*, is misplaced. 285 F.3d 183, 190 (2d Cir. 2002) (noting that "[i]nappropriate prosecutorial comments, standing alone, [do] not justify a reviewing court to reverse a criminal conviction in an otherwise fair proceeding"). In *Elias*, the court was not considering prosecutorial comments that effected a constructive amendment in violation of the Grand Jury Clause. Rather the court considered whether improper remarks warranted a finding of prosecutorial misconduct.

Sakoč's refugee application.  The refugee application "asked a number of questions related to his past, including his prior military service."  ECF No. 1 at 3.  The meaning of this reference to Mr. Sakoč's military service is ambiguous but in context clearly refers to the alleged crimes and persecution described in the paragraphs above it.  One sentence later, the Indictment states that when questioned, he "denied committing any acts of persecution while in the military."  *Id.*  Moreover, the Indictment's description of the LPR and naturalization forms relate only to "the commission of past crimes" and "questions related to past crimes he may have committed and whether he persecuted anyone."  *Id.* at 3-4.  Read in light of the Indictment as a whole, there is no suggestion that Mr. Sakoč's particular unit or duties were the content of any false statement and there is nothing in the Indictment at all that could be interpreted to refer to his alleged membership in the SDA.

The government gave Mr. Sakoč no indication that it would rely on false statements other than those related to the night of July 9, 1992.  Its pretrial filings, oral arguments, and, tellingly, its proposed jury instruction on unanimity referred only to the alleged rape, murder, and burning described in the Indictment.  The government's new theories in closing were not

14

included in the Indictment and therefore broadened the possible bases for conviction.

The Court must next address whether those new false statements nevertheless fell within the "core of criminality" of which Mr. Sakoč had received notice. Determining whether a constructive amendment has occurred depends on how closely the facts align with one of the two poles in the case law. On the one hand are cases involving "proof at trial of a distinctly different complex set of uncharged facts." *D'Amelio*, 683 F.3d at 419. For example, in *Stirone*, the indictment charged interference with the importation of actual, past sand shipments into Pennsylvania, but at trial the prosecution presented proof that the defendant had interfered with the exportation of future steel shipments from a nonexistent steel mill out of Pennsylvania into other states. 361 U.S. at 213-19. Similarly, in *Milstein*, the indictment charged the defendant with distributing misbranded drugs in interstate commerce with fraudulent intent, but at trial the government presented evidence establishing guilt based on a completely different theory of misbranding, namely that drugs labeled "sterile" were misbranded because they had been contaminated with bacteria and endotoxins. 401 F.3d at 64-65.

On the other hand are cases involving a "single set of discrete facts consistent with the charge in the indictment."

15

*D'Amelio*, 683 F.3d at 419.  For example, in *United States v. Knuckles*, 581 F.2d 305, 308-09 (2d Cir. 1978) the defendants were charged with distributing heroin but at trial the evidence showed that the substance was cocaine.  The court noted that the only variance alleged was the nature of the substance.  The time, place, people, and object proved at trial were all the same as those contained in the indictment.  Likewise, in *Dupre* there was no constructive amendment because the evidence at trial concerned the same elaborate scheme to defraud investors as was described in the indictment and the starting and end dates of the conspiracy corresponded to the proof at trial, even though the particular wire transfer identified in the indictment was not proven at trial.  462 F.3d at 140-41.

The Court finds that, as in *Stirone* and *Milstein*, the government's new theories were substantially different from the core of criminality contained in the Indictment.  It might have been a different case if the government had offered proof that Mr. Sakoč had committed some other unspecified act of persecution around that time.  However, the Indictment refers to a specific date and a specific category of violent crimes against a specific set of women.  There are no other factual bases for alleging that the four statements were false.  The proposed joint jury instruction further demonstrates that the parties and, frankly, the Court consistently viewed the core of

16

criminality as false statements regarding crimes and persecution
in or around July of 1992.  Mr. Sakoč had no notice that the
government would seek to prove he lied about his military duties
and political membership.

This is also not a case in which "a generally framed
indictment encompasse[d] the specific legal theory or evidence
used at trial."  *Milstein*, 401 F.3d at 65 (quoting *Salmonese*,
352 F.3d at 620).  The universe of false statements which the
Indictment could have covered was potentially very broad.  The
government alleged that Mr. Sakoč lied on his naturalization
application, but it also alleged that one of those lies could be
a *past* lie on prior immigration forms and in prior interviews.
These nested layers covered a very broad period of time because
the immigration forms and interviews asked open-ended questions.
To further complicate matters, in order for a false statement
made in this context to be criminal it had to have been made
knowingly, meaning the defendant knew that the
misrepresentations alleged in the indictment were false when the
defendant made them or the defendant knew that he was not
eligible for citizenship at the time the misrepresentations were
made.  ECF No. 180 at 17.  The government had to prove layers of
knowledge corresponding to multiple layers of potential lies.

In the face of such a broad and complex universe of
potential false statements, the government, understandably,

17

narrowed down the set of potential falsehoods.  It focused on
which aspects of his history Mr. Sakoč had omitted or
misrepresented, namely the events of July 9, 1992.  The
Indictment did not have to be so specific, however.  It could
have included a catch-all provision that might have given Mr.
Sakoč notice that he had made other false statements concerning
the years during the conflict in Bosnia.  The Court finds that
the Indictment is narrowly drawn and does not cover the
government's newly-raised theories.

The government's reliance on cases involving false
statements described in more broadly drawn indictments,
therefore, is misplaced.  *See*, *e.g.*, *Rigas*, 490 F.3d at 229;
*United States v. Kaplan*, 490 F.3d 110, 130 (2d Cir. 2007);
*United States v. Bernstein,* 533 F.2d 775, 777 (2d Cir. 1976).
In *Rigas*, for example, the court noted that when the crime
charged "involves making false statements the core of
criminality is not the substance of the false statements but
rather that knowing falsehoods were submitted."  490 F.3d at 229
(internal quotation omitted).  However, the question still turns
on whether the defendant had notice of what the government would
seek to prove.  *Id.* at 230.  The *Rigas* court explained that an
indictment must be read to include facts which are necessarily
implied by the specific allegations made.  *Id.* at 229.  The
defendants in *Rigas* were officers of Adelphia.  They were

charged with bank fraud in an indictment that alleged "broadly" that the defendants and their co-conspirators "caused Adelphia to record false and misleading entries in its books and records for the purpose of substantiating false and fraudulent loan compliance reports." *Id.* The government supported this allegation by introducing evidence about sham marketing support agreements that resulted in an artificial increase in revenue. That this increase in revenue would contribute to false and fraudulent loan compliance report was implied by the broad allegations in the indictment. *Id.* at 230.

When an indictment is narrowly drawn and specific, as is the case here, the facts to be inferred from the specific allegations in the Indictment are likewise narrow. In this case Mr. Sakoč's alleged lies about his military duties and political membership were not implied by any of the allegations in the Indictment nor were they encompassed within any previous legal theory expounded by the government.

Finally, the Court is persuaded that the government's new theories created a "substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *D'Amelio*, 683 F.3d at 416 (quoting *Mollica*,

849 F.2d at 729).[5]  Counsel's comments were addressed directly to questions 23 and 24 of the N-400 application.  Those were the only two questions to which the jury unanimously agreed in convicting Mr. Sakoč.  When the Court inquired what the basis for the false statements could be in light of the fact that the jury had made no finding on the questions specifically regarding crimes or persecution, the government frankly acknowledged that it was possible that the jury had convicted Mr. Sakoč on the basis of its new theories.  ECF No. 198 at 7 ("I think there was evidence in the case, particularly with regard to the refugee form, of false statements as far as participation in which unit he was involved in."); *Id.* ("I think there were also questions with regard to the LPR form where he omitted the years 1992 and 1993 and his service in the HOV and simply indicated he had served in the Bosnian Army in 1994.").

The Court need not definitively determine which aspects of the evidence at trial supported the jury's verdict.  It is

---

[5] Mr. Sakoč notes that in some instances the Second Circuit has framed the test as asking if "it is *uncertain* whether the defendant was convicted of conduct that was the subject of the grand jury's indictment," *Milstein*, 401 F.3d at 65 (emphasis added) (quoting *Salmonese*, 352 F.3d at 620), rather than whether "there is a *substantial likelihood* that the defendant *may have been* convicted of an offense other than that charged in the indictment," *D'Amelio*, 683 F.3d at 416 (emphasis added) (quoting *Mollica*, 849 F.2d at 729).  Mr. Sakoč can meet either standard and, regardless of which one is used, it is clear that a defendant is not required to prove definitively what the jury relied on in reaching its verdict.  It is enough that there is sufficient doubt or uncertainty.

enough that government's new theories referred to questions 23
and 24 explicitly and that those two questions were the basis of
the jury's verdict.  While it is possible that the jury
unanimously concluded that facts alleged in the Indictment were
the basis of the false statements it is by no means clear and
the inference to be drawn, if any, from the jury's silence on
the questions regarding past crimes and persecution suggests
that it was not so.

The Court, therefore, "cannot be certain that the jury
convicted [Mr. Sakoč] of the same [false statements] on which
the grand jury indicted him."  *Mollica*, 849 F.2d at 730.  Like
the defendant in *United States v. Wozniak*, 126 F.3d 105, 110 (2d
Cir. 1997), if Mr. Sakoč had been aware that the government
would seek a conviction based on something other than the night
of July 9, 1992, he "might have chosen a different trial
strategy."  Therefore the Court finds that the constructive
amendment of the Indictment created a *per se* violation of Mr.
Sakoč's rights under the Grand Jury Clause and grants his motion
for a new trial.

### B. Prejudicial Variance

Mr. Sakoč argues, in the alternative, that even if the
government's new theories did not constructively amend the
Indictment they nevertheless constituted a prejudicial variance.
The Court agrees.  A variance occurs when the evidence offered

21

at trial proves facts materially different from those alleged in
the indictment. *Salmonese*, 352 F.3d at 621.   A defendant
cannot demonstrate that he has been prejudiced by a variance in
proof, however, where the pleading and proof "substantially
correspond, where the variance is not of a character that could
have misled the defendant at the trial, *and* where the variance
is not such as to deprive the accused of his right to be
protected against another prosecution for the same offense."
*Id.* at 621-22 (emphasis added) (quoting *United States v.*
*Mucciante*, 21 F.3d 1228, 1236 (2d Cir. 1994)).

    All three aspects of prejudice are present here.   To begin
with the pleadings and proof do not substantially correspond and
the Court is persuaded that the government's new theories misled
Mr. Sakoč at trial for the reasons explained above.   Moreover,
the Indictment does not protect Mr. Sakoč from prosecution for
the same offense because it does not contain the government's
new theories but those theories actually may have been the basis
for the conviction in this case.   A double jeopardy claim
"cannot succeed unless the charged offenses are the same in fact
and in law."   *United States v. Olmeda*, 461 F.3d 271, 282 (2d
Cir. 2006) (quoting *United States v. Estrada*, 320 F.3d 173, 180
(2d Cir. 2003)).   While a subsequent prosecution for false
statements made during Mr. Sakoč's immigration process might be
the same in law it would not necessarily be the same in fact.

22

To determine whether two offenses charged are the same in fact, "a court must ascertain whether a reasonable person familiar with the totality of the facts and circumstances would construe the initial indictment, at the time jeopardy attached in the first case, to cover the offense that is charged in the subsequent prosecution." *Id.* The Indictment does not bar prosecution for unlawful procurement of naturalization based on false statements related to Mr. Sakoč's military duties or political membership because a reasonable person familiar with the totality of the facts and circumstances would not construe the Indictment to cover those false statements. Therefore the variance in proof was prejudicial and the Court grants Mr. Sakoč's motion for a new trial on this basis as well.

### C. Manifest Injustice

Rule 33 "confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Polouizzi*, 564 F.3d 142, 160 (2d Cir. 2009) (quoting *Sanchez*, 969 F.2d at 1413). The "ultimate test" is "whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). While one kind of manifest injustice courts might confront is a "real concern that an innocent person may have been convicted," it surely is not the only kind. *Id.* Even if Mr. Sakoč could not demonstrate that

the government had constructively amended the Indictment or prejudicially varied from it, letting the conviction against him stand in this case would be a fundamentally unfair miscarriage of justice within the Court's discretion to correct.  The content of the Indictment and the government's representations up until closing argument led Mr. Sakoč and the Court to believe that this case was, at its core, about war crimes in Bosnia in 1992.  Permitting the government to potentially convict Mr. Sakoč based on its last minute theories thrown in for good measure but previously unknown to Mr. Sakoč and his counsel would be manifestly unjust.  Therefore, the Court would grant Mr. Sakoč motion's for a new trial in its own discretion even if the government had not constructively amended or prejudicially varied from the Indictment.

**D. Plain Error**

The government notes that counsel for Mr. Sakoč never objected to the underlying evidence, the verdict form, or counsel's arguments during trial, so the errors Mr. Sakoč alleges are subject to plain error review.  Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").  Mr. Sakoč does not concede that the plain error standard should apply but neither does he argue that the Court is required to apply some other standard.

24

Cases addressing plain error review often involve defendants raising the question of constructive amendment or prejudicial variance for the first time on appeal rather than in the context of a motion for a new trial. *See, e.g.*, *United States v. McGinn*, No. 13-3164-cr(L), ___ F.3d___, 2015 WL 2445062, at *10 (2d Cir. May 22, 2015) ("Because defendants raise their constructive amendment claim for the first time on appeal, we review it for plain error."); *United States v. Bastian,* 770 F.3d 212, 219 (2d Cir. 2014) (noting same). Mr. Sakoč is objecting, in a sense, before his appeal. However, plain error review may be called for in this posture nevertheless. *See United States v. Fortgang*, 77 Fed. App'x 37, 39 (2d Cir. 2003) ("Finally, Fortgang contends that improper comments in the closing arguments of the prosecutor effected a constructive amendment or variance of the indictment. Because Fortgang did not object during trial, we are limited to plain error review."); *United States v. Martinez*, 100 F.3d 941 (2d Cir. 1996) ("Because, however, the defendant neither objected to the prosecutor's closing arguments during the trial, nor objected to, or asked clarification of, the charge to the jury, we review this claim for plain error only.").

The Court need not decide what standard to apply because Mr. Sakoč can meet the plain error standard. Plain error requires a four-prong showing: "(1) there is an error; (2) the

error is clear or obvious, rather than subject to reasonable
dispute; (3) the error affected the appellant's substantial
rights, which in the ordinary case means it affected the outcome
of the district court proceedings; and (4) the error seriously
affect[s] the fairness, integrity or public reputation of
judicial proceedings." *United States v. Marcus*, 560 U.S. 258,
262 (2010) (internal quotations omitted).  The Second Circuit
has "previously noted that constructive amendments are 'per se
prejudicial' even in the context of plain error review, thus
automatically satisfying the third prong."  *Bastian*, 770 F.3d at
220 n.4 (2d Cir. 2014) (quoting *Thomas*, 274 F.3d at 670).

The Court finds that the government's constructive
amendment or prejudicial variance was an obvious error that
affected the appellant's substantial rights for the reasons
described above.  Moreover, the Court is convinced that the
error seriously affected the fairness, integrity, and public
reputation of the judicial proceedings.  Therefore, the Court
will grant Mr. Sakoč's motion for a new trial.

Because the Court has agreed to grant Mr. Sakoč a new trial
on the basis of a constructive amendment or prejudicial variance
and in its own discretion pursuant to Rule 33, the Court need
not reach the question of whether the verdict was against the
weight of the evidence.

**Conclusion**

Mr. Sakoč's Post-trial Motion for a New Trial Pursuant to Fed. R. Crim. Proc. Rule 33 is hereby **granted.**

Dated at Burlington, in the District of Vermont this 30th day of June, 2015.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge
